UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KARIN SODERBERG | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:02CV02010 (PCD) |
| | : | |
| GUNTHER INTERNATIONAL, Ltd. | : | |
| | : | |
| Defendant. | : | AUGUST 29, 2003 |

<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Fed. R. Civ. P. 56 and Local R. 7, defendant Gunther International,

Ltd. ("Gunther") respectfully moves that this Court enter summary judgment in its favor

on plaintiff Karin Soderberg's one-count complaint dated November 12, 2002

("Complaint").[1]  In this action, plaintiff claims that Gunther terminated her on the basis of

her age in violation of the Age Discrimination in Employment Act ("ADEA").  As the

interrogatories, deposition testimony, and affidavit submitted herewith show, there are no

genuine issues of material fact to be tried with respect to plaintiff's ADEA claim.  Gunther

therefore is entitled to judgment on plaintiff's Complaint as a matter of law.

---

[1]    Gunther submits concurrently herewith an appendix of unpublished authority and
documents that it relies upon to support its motion for summary judgment ("Appendix").
While plaintiff refers to Gunther International, **Inc**. in her complaint, she was employed by
Gunther International**, Ltd.**  There is no entity titled Gunther International, **Inc**.  (Affidavit
of Marc I. Perkins, dated August 28, 2003 ("Perkins's Aff.") at ¶ 2) (Appendix at Tab A).

<u>STATEMENT OF UNDISPUTED FACTS</u>

In 1977, William Gunther, Jr. formed Gunther International, Ltd. (Affidavit of Marc I. Perkins, dated August 28, 2003 ("Perkins's Aff.") at ¶ 4) (Appendix at Tab A). Mr. Gunther served as the company's president and chief executive officer ("CEO") until September 1994. (<u>Id.</u>). Gunther designs, develops, assembles, markets, and services high-speed mail systems. (<u>Id.</u> at ¶ 5). Previously headquartered in Mystic, Connecticut, in spring 1991, Gunther moved its headquarters to Norwich. (<u>Id.</u> at ¶ 6). Plaintiff joined Gunther in June 1989. (Complaint, ¶ 5).

Gunther was in serious financial trouble during much of the 1990's. (Perkins's Aff. at ¶ 7).[2] In October 1998, when the company was on the verge of bankruptcy, an investment group that had invested millions of dollars in Gunther named Marc Perkins Gunther's president and CEO. (<u>Id.</u>). Mr. Perkins was hired because the group believed that he had the skills, personality, and experience necessary to turn Gunther around. (<u>Id.</u>). Mr. Perkins, who was 53 years old when he was named CEO, currently holds this title. (<u>Id.</u> at ¶¶ 3, 8).

When Mr. Perkins joined Gunther, Gunther was structured so that the company's marketing group, which included plaintiff, was directed by Jewell Smokes. (<u>Id.</u> at ¶ 9). Mr. Smokes worked out of his home in Atlanta, Georgia, over 1000 miles from Gunther's

---

[2]     In 1994, plaintiff's salary was reduced from $49,500 to $28,000 for reasons that plaintiff understood related to Gunther's financial difficulties. (Deposition of Karin Soderberg, March 26, 2003 ("Soderberg Dep.") pp. 40-45) (Appendix at Tab B).

Norwich headquarters.  (Id.)  Plaintiff, who worked in Gunther's Norwich office, began reporting to Mr. Smokes in approximately fall of 1997.  (Deposition of Karin Soderberg, March 26, 2003 ("Soderberg Dep.") pp. 34-35) (Appendix at Tab B).  During the period that he supervised plaintiff from Atlanta, Mr. Smokes traveled to Norwich approximately one time every other month.  (Soderberg Dep., p. 34).  Mr. Smokes was the eleventh supervisor to supervise plaintiff in her approximately eight years with Gunther.  (Soderberg Dep., pp. 17-33).

Shortly after joining Gunther and assuming the title of CEO, Mr. Perkins began taking steps aimed toward improving Gunther's financial situation.  (Perkins's Aff. at ¶ 11).  Among other changes, Mr. Perkins combined the company's sales and marketing departments and on November 23, 1998, he named Daniel Chevalier vice president of the combined sales and marketing department.  (Id.).  In a related change, because it made more business sense for Gunther's marketing group, which worked out of Gunther's headquarters in Norwich, to report to a supervisor who also worked in Norwich, Mr. Perkins changed the reporting structure so that the marketing department reported directly to Mr. Chevalier.  (Soderberg Dep., pp. 36-38).  As a result, beginning in May 1999, plaintiff, who held the title "marketing manager,"[3] reported to Mr. Chevalier.  (Id. at 36;

---

[3]    Plaintiff explains that she was not quite sure in May 1999 whether her job title was "marketing communications manager or marketing manager."  (Soderberg Dep., p. 35) (Appendix at Tab B).  Her business cards indicated "marketing manager" and her final evaluation indicated that in January 2000, she was a "marketing and communications manager."  (G000035) (Appendix at Tab C).  Notwithstanding that her job title included the
(continued . . .)

Perkins's Aff. at ¶ 12).

Mr. Perkins understood that Gunther's marketing efforts were critical to Gunther's financial turn-around and he directly involved himself in the company's marketing efforts. (Id. at ¶ 10).  Following Mr. Perkins's reorganization, Mr. Perkins and Mr. Chevalier began regularly to monitor plaintiff's performance and they were displeased.  For example, when Mr. Perkins joined Gunther, he concluded that the company's marketing materials were virtually nonexistent, and to the extent that marketing materials existed, they were ineffective.  (Id. at ¶¶ 10, 13).

Dissatisfied generally with plaintiff's job performance, on several occasions during 1999, Mr. Perkins voiced his concerns to Mr. Chevalier.  (Id. at ¶ 13). Mr. Perkins spoke to plaintiff directly regarding two incidents: 1) during the fall of 1999, when plaintiff did not, as was part of her duties, arrange for a hotel room for Mr. Perkins who was traveling to attend a trade show; and 2) when, after Mr. Perkins had requested that plaintiff arrange for two small photos of himself with a board of directors, she arranged (without permission) a major photo shoot of corporate personnel.  (Id.; Soderberg Dep., pp. 90-101).

During January 2000, by which time Mr. Perkins had been dissatisfied with plaintiff's job performance for a number of months, Mr. Perkins directed Mr. Chevalier to terminate plaintiff.  (Perkins's Aff. at ¶ 15).  Plaintiff's age, which Mr. Perkins did not

_____

(. . . continued)

term "manager," no employees ever reported to plaintiff.  (Soderberg Dep., p. 35).

even know, had nothing to do with his decision.  (Id.).  Mr. Perkins was 54 years old at the time.  (Id.).

On January 28, 2000, Mr. Chevalier terminated plaintiff.  (Id. at ¶ 16).  In his performance evaluation of that date, Mr. Chevalier noted, among other performance issues, that he "very rarely" was pleased with the quality of work that plaintiff gave him to review.  (See G000035-37) (Appendix at Tab C).  Mr. Chevalier noted that he had discussed this with plaintiff but that he had seen "very little" improvement.  (Id. at G000035).  He also rated plaintiff's performance as "unsatisfactory" with respect to "application of job knowledge," and stated that plaintiff had admitted to him that "she was unable to draft or edit any type of text on any of our products or services as are required to produce marketing letters, magazine articles, and company newsletters. . . . because she knows so little about them."  (Id.).  Mr. Chevalier found this "unacceptable," and explained that "it has caused delays in just about every article and newsletter [Gunther] had to produce."  (Id.).

Finally, as a general comment, Mr. Chevalier noted that as manager of Gunther's "[m]arketing effort [plaintiff] lack[ed] Gunther product knowledge, industry knowledge, any demonstration of [ ] developing a creative thinking campaign or the initiative to take [the] department where it needs to go."  (Id. at G000036).  Given that plaintiff had been with Gunther by that point for over ten years, Mr. Chevalier expected her to "know more about what [they] sell or at least have her request the training to gain that knowledge."

(Id.).  Therefore, on the basis of her poor performance and at Mr. Perkins's direction, after giving her this review, Mr. Chevalier terminated plaintiff.  (Perkins's Aff. at ¶ 16; Soderberg Dep., pp. 49-52).  Mr. Chevalier was nearly 44 years old at the time. (Perkins's Aff. at ¶ 16).

Plaintiff has no factual foundation for claiming that Gunther's decision to terminate her was due, in whole or in part, to her age.  Plaintiff in fact states that she was surprised to learn that she was being terminated – she "wasn't expecting anything like this." (Soderberg Dep., pp. 51-52).  On the afternoon of January 28, 2000, when Mr. Chevalier asked her to come to his office, plaintiff believed that Mr. Chevalier was responding to her request to speak with him on certain "action items."  (Id. at pp. 45-46; 50).   Later, after she had been terminated, by a process of elimination, plaintiff surmised that she must have been terminated because of her age: "I had to think of some reason and I *couldn't come up with anything else* other than I am older than they are  . . ."  (Id. at 66) (emphasis added).[4] Plaintiff's *sole* "evidence" that Gunther terminated her on the basis of her age is that she was "the oldest person probably."  (Id. at 67).

---

[4]     In  charge filed on or about May 18, 2000 with the Connecticut Commission of Human Rights and Opportunities ("CHRO"), plaintiff previously attested that she believed Gunther and Daniel Chevalier, individually, had terminated her on the basis of her age *and* gender. (See Affidavit of Illegal Discriminatory Practice, Appendix at Tab D).  On July 30, 2002, the CHRO dismissed the charge on the merits based on its finding of "no reasonable cause."  (See CHRO Notice of Final Agency Action No Reasonable Cause/Administrative Dismissal Determination, dated July 30, 2002,  Appendix at Tab E).  Plaintiff has not pursued the gender claim.

> Q.:    You came to believe that age was a motivating factor in the decision to let you go?
>
> A.:    *When I looked at the range of what possible reasons there could be, I couldn't find anything else other than age and/or sex discrimination.*
>
> Q.:    What is the evidence that age was a motivating factor?
>
> A.:    *I was the oldest person probably. . . .*
>
> Q.:    Any other evidence of age being a motivating factor in Gunther's decision to let you go?
>
> A.:    *No.*

(Id. at 66-67) (emphasis added).

Approximately two months *after* Gunther terminated plaintiff, on or about March 31, 2000, Gunther decided that Gary Schaefer, who was 42 years old, was the best candidate for the position. After conducting a broad search and considering both internal and external job candidates, Gunther selected Mr. Schaefer based upon, among other qualifications, his knowledge of Gunther's product. (Perkins's Aff. at ¶¶ 17-18). At the time of his promotion, Mr. Schaefer had been with Gunther for six years and was completing his Master's degree in management, with a concentration in marketing. (Id. at ¶ 18; G000415-16, Appendix at Tab F). Gunther's decision to promote Mr. Schaefer had nothing to do with his age. (Perkins's Aff. at ¶ 19).

Gunther terminated plaintiff based upon the shared view of its new CEO and vice

president of sales and marketing that plaintiff simply was not performing as the company needed its marketing manager to perform. Recognizing the importance of the marketing manager's role in a revitalized Gunther and intent on placing someone in this role who could assist Mr. Perkins in his efforts to turn Gunther around, *after* Gunther terminated plaintiff, the company conducted a broad search for a new marketing manager. Although ultimately Gunther selected a younger, internal candidate to fill the position, the undisputed evidence shows that Gunther made this decision only *after* advertising publicly, posting the job internally, and considering both internal and external candidates. (Id. at ¶¶ 17-18; G000185-90, Appendix at Tab G).

The decision to terminate Ms. Soderberg was made by Gunther's new management team in the context of elevating the sales and marketing functions and making the changes necessary to revive a company in financial trouble. Like other similarly successful corporate resurrections, this mission necessarily required Mr. Perkins to take a hard and fresh look at the company and to make management decisions he deemed necessary to turn the company around. While plaintiff, a ten-year employee, apparently was surprised by this decision, there is no evidence that suggests that she was treated differently on the basis of her age or that Mr. Perkins or Mr. Chevalier otherwise acted in bad faith.

Notwithstanding the above, plaintiff claims that Gunther terminated her in violation of the ADEA. As a result of this alleged discrimination, she claims that she has suffered, among other injuries, emotional distress, "mental anguish," and damage to her reputation.

For her injuries, she seeks to recover compensatory and punitive damages, attorney's fees, costs, interest, and "[s]uch additional relief as the court may deem just or equity may provide, including an order of reinstatement to her employment."[5]  Because there is no genuine issue of material fact to be tried on plaintiff's claims, Gunther respectfully urges this Court to grant summary judgment in its favor.

<u>ARGUMENT</u>

Summary judgment should be granted when, as here, "the pleadings, depositions, answers to interrogatories . . . together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  The Second Circuit Court of Appeals repeatedly has affirmed that summary judgment is appropriate in ADEA actions when, as in this instance, a plaintiff presents evidence insufficient to warrant a full trial on the merits.  <u>See, e.g.,</u>

---

[5]    Gunther notes that plaintiff is barred as a matter of law from recovering for compensatory and/or punitive damages under the ADEA. <u>See, e.g.,</u> <u>Hatter v. New York City Housing Auth.</u>, 1998 U.S. App. LEXIS 27571, *3 (2d. Cir. Oct. 22, 1998) ("ADEA does not provide for compensatory or punitive damages" but provides only for "make whole remedies such as back pay, front pay and reinstatement") (Appendix at Tab H); <u>Johnson v. Al Tech Specialties Steel Corp.</u>, 731 F. 2d 143, 147-48 (2d Cir. 1984) (affirming district court's dismissal of plaintiff's demand for compensatory and punitive damages under ADEA); <u>Douglas v. American Cyanamid Co.</u>, 472 F.Supp. 298, 304 (D.Conn. 1979) (granting motion to strike or dismiss prayer for punitive or psychological damages under ADEA); <u>see also</u> <u>Townsend v. Exchange Ins. Co.</u>, 196 F. Supp.2d 300 (W.D.N.Y. 2002) (dismissing plaintiff's claim for emotional pain and suffering damages under ADEA); <u>Gordon v. Pall Aeropower Corp.</u>, 1998 U.S. Dist. LEXIS 18602, *2-3 (M.D.Fla. Sept. 28, 1998) (dismissing ADEA plaintiff's claims for "compensatory damages for pain, suffering, humiliation, damage to work reputation, and emotional distress" because ADEA does not provide for such damages) (Appendix at Tab I).

Molnar v. Pratt & Whitney, 2003 U.S. App. LEXIS 7974, *4 (2d Cir. April 25, 2003) (affirming district court's (Eginton, J.) summary judgment in ADEA action) (Appendix at Tab J); Silva v. The Advocacy Center, Inc., 2003 U.S. App. LEXIS 6353, *5 (2d Cir. April 2, 2003) (affirming district court's grant of summary judgment on plaintiff's ADEA claims) (Appendix at Tab K); Tarshis v. The Riese Org., 2003 U.S. App. LEXIS 5989, *4 (2d Cir. March 27, 2003) (same) (Appendix at Tab L); Jetter v. Knothe Corp., 324 F.3d 73, 77 (2d Cir. 2003) (same); Druyan v. Hofstra Univ., 2003 U.S. App. LEXIS 1441, *5 (2d Cir. Jan. 28, 2003) (same) (Appendix at Tab M). In fact, as Judge Arterton recently noted, the Second Circuit Court of Appeals has instructed that "the salutary purposes of summary judgment - avoiding protracted, expensive and harassing trials - *apply no less to discrimination cases* than to . . . other areas of litigation." Choate v. Transport Logistics Corp., 234 F. Supp.2d 125, 128 (D.Conn. 2002) (emphasis added), *quoting* Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001); see also Willis v. Anthem Blue Cross & Blue Shield, 193 F. Supp.2d 436, 442 (D.Conn. 2001).

In this instance, although plaintiff alleges that Gunther illegally terminated her on the basis of her age, there is no evidence whatsoever that Gunther's decision to terminate her employment had anything to do with how old she was. Plaintiff herself confirmed that she did not perceive any age animus at Gunther nor did she feel that she ever had been treated differently on account of her age. (Soderberg Dep., pp. 66-67). Plaintiff admittedly has sued Gunther based solely on the fact that she was the oldest person

employed by Gunther on the date that she was terminated. While this may be true, this fact alone is wholly insufficient to allow a jury to conclude that Gunther violated the ADEA. Gunther therefore respectfully submits that the law of this Circuit requires this Court to enter summary judgment in its favor.

I.    Gunther Is Entitled to Judgment on Plaintiff's ADEA Claim As a Matter of Law.

The ADEA renders it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." 29 U.S.C. § 623(a)(1) (2003) (emphasis added). "When a plaintiff alleges disparate treatment, liability depends on whether the protected trait (under the ADEA, age) *actually motivated* the employer's decision. . . . That is, the plaintiff's age must have *actually played a role* in the employer's decisionmaking process and had a *determinative influence* on the outcome." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (emphasis added; internal quotation marks and citation omitted).

In deciding whether an employer has violated the ADEA in cases in which there is no direct evidence of age discrimination, courts in this Circuit apply the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001) (McDonnell Douglas framework applies to ADEA claims); Schnabel v. Abramson, 232 F.3d 83, 87 (2d

Cir. 2000) (same); <u>Choate</u>, 234 F. Supp.2d at 128 (noting "[t]he Second Circuit analyzes ADEA claims under the familiar burden shifting framework first set out by [<u>McDonnell Douglas</u>]").

      "Under McDonnell Douglas, a plaintiff establishes a prima facie case of discrimination by showing that: (i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination . . . " <u>Roge</u>, 257 F.3d at 168. If a plaintiff establishes her prima facie case, "a presumption arises that the employer unlawfully discriminated, and the burden shifts to the defendant to present a nondiscriminatory reason for the adverse employment action." <u>Id.</u>  When, however, as here, the employer offers a nondiscriminatory basis for the employment action, "the presumption of discrimination drops out, and the burden shifts back to the plaintiff, to prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." <u>Id.</u>, *quoting* <u>Reeves</u>, 530 U.S. at 143 (internal citations and quotation marks omitted).

      Applying these well-settled standards, the undisputed facts in this instance show that plaintiff has failed even to establish a prima facie case of discrimination.  Further, even if she had established a prima facie case of discrimination -- which she has not done -- the undisputed and irrefragable facts show that Gunther terminated plaintiff for the simple and

legitimate reason that both her supervisor and her supervisor's supervisor (who also was

the new CEO hired to turn Gunther around) considered her a poor performer.  Plaintiff can

offer no evidence that Mr. Perkins's and Mr. Chevalier's evaluation of her job

performance was not the true reason that she was terminated or that this stated reason is a

pretext for discrimination.  Gunther therefore respectfully submits that this Court should

grant its motion for summary judgment.

> A.    Plaintiff has not and cannot establish a prima facie case of age
>        discrimination.

The burden upon a plaintiff seeking to make a prima facie case of discrimination is

not heavy.  See, e.g., Walsh v. United Cable Tech. Servs. Corp., 1999 U.S. App. LEXIS

34238, *4 (2d Cir. Dec. 20, 1999) (Appendix at Tab N).  Nonetheless, in addition to

showing that she was a member of a protected class, that she was qualified for the job, and

that she suffered an adverse employment action, plaintiff must produce evidence that would

permit a reasonable jury to conclude that she was terminated under "circumstances giving

rise to an inference of discrimination."  Roge, 257 F.3d at 168.  In this instance, the

undisputed facts, even when viewed in a light most favorable to plaintiff, simply do not

allow for such an inference.

To support her claim that Gunther illegally terminated her on the basis of her age,

plaintiff here relies on nothing more than her supposition that she was the oldest employee

at Gunther at the time of her termination.  Even if she was the oldest Gunther employee

when she was terminated, if the fact that an organization terminates its oldest employee

were alone sufficient to presume as a matter of law that the organization has discriminated against the employee, every employer subject to the ADEA would be forced to either forego terminating its oldest employee (should she be over 40) *or* be faced with the possible burden of rebutting a *per se* presumption that it violated the ADEA.  That is not and should not be the law.

Accordingly, because plaintiff in this instance offers nothing to support her action against Gunther other than the fact that she was the oldest employee on the date of her termination, she has not established her prima facie case.[6]  Gunther therefore respectfully submits that this Court should enter summary judgment in its favor.  E.g., Kyriazi v. Rumsfeld, 2003 U.S. App. LEXIS 9605, *6 (2d Cir. May 16, 2003) (affirming grant of summary judgment in action brought pursuant to Title VII and ADEA where plaintiff "failed to present evidence suggesting that any of the allegedly adverse employment action took place under circumstances suggesting that it was motivated by her membership in the protected class, rendering summary judgment appropriate.") (Appendix at Tab O).

---

[6]     Plaintiff may point to the fact that she had been with Gunther for over ten years before she was terminated, that other supervisors purportedly had been happy with her work, and that she had received a positive performance evaluation from her previous supervisor.  These facts do not give rise to an inference of discrimination, particularly where, as here: 1) plaintiff had eleven (11) different supervisors in eight years; 2) plaintiff's next previous supervisor was located 1,000 miles from where she worked in Gunther's corporate headquarters; and 3) the new CEO (age 54) and new director of sales and marketing (age 43) made their own judgments, as they were entitled to do, as to how plaintiff's abilities and performance matched Gunther's needs at that time.

B.     Gunther has offered a legitimate nondiscriminatory basis for terminating plaintiff.

Even assuming for the sake of argument that plaintiff could establish a prima facie case of discrimination, her ADEA claim fails as a matter of law because Gunther has offered a legitimate nondiscriminatory reason for its action and plaintiff has offered no evidence to suggest that Gunther's stated reason is untrue.  As Gunther has stated since January 28, 2000, Gunther's new CEO, Mr. Perkins, and plaintiff's supervisor, Mr. Chevalier, felt that plaintiff lacked important skills and knowledge necessary to fulfill her responsibilities.[7]  Accordingly, Mr. Perkins ordered Mr. Chevalier to terminate plaintiff and, *after* he did so, Gunther proceeded to fill the opening for a marketing manager.  Two months later, when Gunther finally decided upon a new marketing manager, it selected an internal candidate who was eminently qualified for the position and who was himself in his forties.  As plaintiff offers nothing to suggest that this is not exactly how events unfolded,

---

[7]     Plaintiff claims to have received favorable oral reviews by Gunther supervisors prior to Mr. Smokes; she received her first written performance evaluation in February 1999. (Soderberg Dep., p. 73). In a review that Ms. Soderberg signed on February, 5, 1999, Mr. Smokes evaluated plaintiff's performance for the period December 17, 1997 through February 16, 1999.  (See G000038-47) (Appendix at Tab P).  Gunther does not dispute that Mr. Smokes, who was basing his evaluation primarily on what he could observe from Atlanta, evaluated plaintiff positively in plaintiff's first-ever written review.  As stated above, Gunther terminated plaintiff because Mr. Perkins and Mr. Chevalier, after working with plaintiff on a near daily basis for eight months, did not think she was performing or was capable of performing the important job duties of a Gunther marketing manager.  The issue before the Court is not whether reasonable minds could differ on plaintiff's performance but whether Mr. Perkins's and Mr. Chevalier's decision to terminate plaintiff for performance reasons was simply a ruse, a subterfuge masking discriminatory animus. What a prior supervisor thought about plaintiff's performance is therefore immaterial to the propriety of Gunther's action on January 28, 2000.

summary judgment should enter in Gunther's favor.  See, e.g., Schuster v. Lucent Techs., 2003 U.S. App. LEXIS 7988, *13 (7th Cir. Apr. 28, 2003) (affirming summary judgment for employer where "reasons offered by [employer] – that [plaintiff] was terminated as part of its restructuring efforts at a time of financial difficulty – appear[ed] based on sufficient facts to justify its decision and constitute the actual motivation for the termination decision it made.") (Appendix at Tab Q).

Instructive here are cases such as Schuster, which address ADEA claims by workers negatively impacted by an employer's efforts to achieve or maintain a competitive position.  Here, as the undisputed facts show, after becoming CEO in October 1998, Mr. Perkins made several changes in an effort to save Gunther from bankruptcy.  One of those efforts involved reorganizing Gunther's sales and marketing departments, which resulted in plaintiff working for different supervisors with different and more demanding requirements.  The changes also resulted in the fact that plaintiff's performance was closely monitored for the first time in years.  That these changes ultimately led to plaintiff's termination provides no support for plaintiff's claim that Gunther violated the ADEA.  See, e.g., Schuster, 2003 U.S. App. LEXIS 7988, *13-26 (in rejecting plaintiff's ADEA claim, court noted: "What is at issue is not the wisdom of an employer's decision, but the genuineness of the employer's motives";  because plaintiff failed to raise genuine issue of material fact that employer's stated explanation, i.e., that employee "was terminated as part of its restructuring efforts at a time of financial difficulty" was pretext for age

discrimination, court affirmed district court's grant of summary judgment); Michas v. Health Cost Controls, 209 F.3d 687, 695 (7th Cir. 2000) (summary judgment affirmed where employer cut plaintiff's position to reduce expenses in extraneous departments to make company more attractive to acquiring firm); Tighe v. All Brand Importers, Inc., 814 F.Supp. 237, 241 (D.Conn. 1992) (where, following acquisition, employer chose qualified 33 year-old candidate from incumbent workforce to serve as vice president of sales and terminated 53 year-old vice president from acquired company, because evidence established that employer made "a financially motivated business decision," court held plaintiff failed to raise genuine issue of material fact to support ADEA claim).

Moreover, the undisputed facts fail to suggest that Gunther terminated plaintiff because it "wanted to replace the plaintiff with a much younger male," or that Mr. Schaefer, who was hired to be the new marketing manager "possessed less [relevant] experience than the plaintiff." (Complaint, ¶¶ 7-8).  When hired to be the new marketing manager, Mr. Schaefer had been with Gunther for six years; in January 2000, he was already working for Gunther as a marketing specialist and he even was pursuing a graduate degree in marketing.

Finally, there is no evidence of any covert scheme here -- Mr. Schaefer was promoted *after* plaintiff was terminated and following a lengthy and comprehensive search. See, e.g., Frieze v. Boatmen's Bank of Belton, 950 F.2d 538, 541 (8th Cir. 1991) (the hiring of younger and less qualified replacement "nearly five months after [plaintiff] was

discharged" did "not create reasonable inference of age discrimination"); <u>Simpson v. Midland-Ross Corp.</u>, 823 F.2d 937, 941 (6th Cir. 1987) (noting that former employee's ADEA claim was "substantially weaken[ed]" by fact that he was replaced "several months after [plaintiff's] discharge").  Therefore, the fact that Gunther chose to promote Mr. Schaefer (who was, nonetheless, still in his 40's) does not advance plaintiff's claim.  <u>See Cousins v. Howell Corp.</u>, 113 F. Supp.2d 262, 269 (D.Conn. 2000) (noting that "courts have reiterated time and again that the replacement of an older worker with a younger worker does not itself prove unlawful discrimination," and finding not one "scintilla of evidence to support [plaintiff's] claim," court granted summary judgment to employer on ADEA claim); <u>Bombero v. Warner-Lambert Co.</u>, 142 F. Supp.2d 196, 208 (D.Conn. 2000) (summary judgment granted where court found that if "jury held defendant liable for age discrimination, the only evidence one could point to try to justify verdict would be the difference in ages"; held "[s]uch a verdict could not be sustained under the substantive law of this Circuit.").

C.    Plaintiff has offered no evidence of pretext to rebut Gunther's stated legitimate reason.

The facts of this case are similar to those presented to the court in <u>Grady v. Affiliated Cent.</u>, 130 F.3d 553 (2d Cir. 1997).  There, defendant employer, a central alarm station that provided alarm monitoring services to residential and business alarm vendors, hired plaintiff as a trainee for the position of central station operator.  <u>Id.</u> at 555.  Approximately eight days after she began training with defendant, defendant terminated

plaintiff for poor performance.  Id.  Plaintiff subsequently sued, alleging that defendant terminated her on the basis of age.  Id.

Similar to plaintiff in this instance, during her deposition, plaintiff in Grady could not cite to anyone ever making "a comment that she viewed as relating to her age," nor could she "point to any individual who she believed harbored animosity toward older workers or favored younger workers."  Id. at  557.  Assuming without deciding that plaintiff had established a prima facie case of discrimination, the district court granted defendant's motion for summary judgment on the basis that plaintiff failed to raise a genuine issue of material fact as to whether defendant's stated reason, i.e., that it terminated her due to poor performance, was false.  Id. at 558-59.

"[F]ind[ing] no basis for reversal," the Second Circuit Court of Appeals held that the "record . . . [was] bereft of evidence from which a factfinder could infer that [defendant] discriminated against [plaintiff] on the basis of her age."  Id. at 559-61.  The court found particularly persuasive that, as here, plaintiff "was unable to point to any person at [defendant] whom she viewed as having an animus against older workers."  Id.; see also Schnabel, 232 F.3d at 91 (court noted as one of several fatal weaknesses to plaintiff's claims that he "failed to offer any evidence that he was subjected to any age-related comments or criticisms on the job.").  Because the Grady court could "see no possibility that any rational factfinder could infer that [plaintiff] was treated differently from younger trainees or was fired because of her age," it held that "[s]ummary judgment

dismissing the complaint was proper." Id. at 561. As the record evidence here similarly is "bereft" of any evidence to suggest that Gunther's decision to terminate plaintiff was motivated by her age, Gunther submits that summary judgment in its favor is appropriate.

> D.    Even if plaintiff could offer evidence to suggest that Gunther's stated reasons are pretextual, Gunther's motion for summary judgment should still be granted because plaintiff fails to offer any evidence to suggest that Gunther's reasons mask age discrimination.

Finally, even were plaintiff able to offer evidence to suggest that Gunther's stated reasons are untrue –– which she has not done and can not do -- such a showing would not be fatal to Gunther's motion for summary judgment. Rather, it is the law in this Circuit that, following the United States Supreme Court's holding in Reeves, "a district court still may grant a defendant's motion for summary judgment on a claim under the [ADEA] . . . when a plaintiff has established a prima facie case of discrimination and offered evidence that the defendants' legitimate, nondiscriminatory reasons for firing [her] were pretextual." Schnabel, 232 F.3d at 88 (affirming summary judgment for defendant in ADEA action where although jury could find pretext, plaintiff had "not demonstrated that the asserted pretextual reasons were intended to mask age discrimination.").[8] Summary judgment may still be appropriate when the "record as a whole [does not] create[ ] a reasonable inference

---

[8]    As explained in Schnabel, the United States Supreme Court held in Reeves that an ADEA plaintiff's prima facie case combined with evidence of pretext "may" permit a trier of fact to find for plaintiff. Id., 232 F.3d at 90. Schnabel held that Reeves requires a "case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Id., citing Reeves, 530 U.S. at 150 (internal quotation marks omitted).

that age was a determinative factor in the actions of which plaintiff complains." Id. at 91.

In Choate, 234 F. Supp.2d 125, the Court (Arterton, J.) recently granted summary judgment to defendant employer in an action brought pursuant to the ADEA even though the court found that, based upon the record evidence, the jury could conclude that defendant's stated reason for discharge -- poor performance -- was untrue. Id. at 132. Although there was evidence upon which the jury could find pretext, Judge Arterton held that because there was also evidence to support defendant's position that plaintiff was a poor performer, plaintiff's "evidence of pretext with respect to job performance at best create[d] only a weak issue of fact as to whether the employer's reason was untrue." Choate, 234 F. Supp.2d at 132, *citing*, Reeves, 530 U.S. at 148 (internal quotation marks omitted). Recognizing the "salutary purposes of summary judgment," Choate held that such a "weak issue of fact" was insufficient to defeat defendant's motion for summary judgment. Id. at 128-35.

Importantly, the court in Choate affirmed that when defending against a summary judgment motion in an action brought pursuant to the ADEA, the burden *remains on plaintiff* to establish that age was the true motivation behind the employment action at issue. Id. at 128. In Choate, summary judgment was appropriate because even if the jury could conclude that defendant employer's "articulated rationale of poor job performance was false," plaintiff had not "demonstrated that the asserted pretextual reason[ ] was intended to mask age discrimination." Id. at 133 (internal quotation marks omitted; alterations in

original).  This was fatal to plaintiff's ability to defeat defendant's summary judgment.  Id.

As Judge Arterton explained:

> Even where plaintiff's evidence establishes a de minimis
> prima facie case and demonstrates some pretext, an employer
> *may still be entitled to summary judgment* if such evidence by
> itself or coupled with any additional evidence offered by
> plaintiff could not reasonably support an inference of age
> discriminatory intent.

Choate, 234 F. Supp.2d at 133 (emphasis added).  In this instance, the record evidence

fails even to suggest that Gunther's stated reason for terminating plaintiff is untrue and

therefore, it cannot "reasonably support an inference of age discriminatory intent."  Id.

Simply put, the ADEA does not provide employees over age 40 a lifetime guarantee

of employment and certainly does not insulate an organization's oldest employee from

termination on the basis of poor job performance.  See Curry v. E-Systems, 1995 U.S.

App. LEXIS 34724, *15 (4th Cir. Dec. 11, 1995) (Appendix at Tab R) ("The ADEA is an

anti-age-discrimination statute, not an age-preference statute.").  As the court aptly

explained in Wado v. Xerox Corp., 991 F. Supp. 174 (W.D.N.Y. 1998), if the allegation

that a company terminated its oldest employee while "retain[ing] younger, less experienced

employees, in the absence of any other evidence of discrimination [was sufficient] to give

rise to a genuine issue of fact for trial . . .  any employer who terminated one of [its] oldest

employees . . . could be forced to litigate an ADEA claim all the way to trial."  Wado, 991

F. Supp. at 189; see also Hawkins v. Astor Home for Children, 1998 U.S. Dist. LEXIS

3599, * 26-27 (S.D.N.Y. March 25, 1998) (held plaintiff provided "no more than a

minimal prima facie case from which an inference of age discrimination cannot reasonably be drawn" where "evidence, read in the light most favorable to [plaintiff] still comes down to this: she was treated less favorably than other employees by being discharged, she was the oldest worker in her workgroup, and her performance problems were not as bad as [her supervisor] claims they were.")  (Appendix at Tab S); McCambridge v. Bethlehem Steel Corp., 1995 U.S. Dist. LEXIS 10003, *19 (E.D.Pa. 1995)(under ADEA "employer [is not] prohibited from terminating its oldest employee.") (Appendix at Tab T).

Nor does the ADEA protect older employees from decisions that are objectively unfair or even mean.  E.g., Wado v. Xerox Corp., 991 F. Supp. at 214 (ADEA does not "provide vehicle [ ] for venting one's anger, no matter how justified it might be."). Rather, the ADEA requires merely that an employer not make its employment decisions based upon an employee's age.  See Curry, 1995 U.S. App. LEXIS 34724, *6.  Here, as the record contains evidence that suggests only that plaintiff's termination was motivated by Mr. Perkins's legitimate objective of making Gunther financially viable, summary judgment in Gunther's favor is appropriate.

<u>CONCLUSION</u>

Gunther respectfully submits that there are no genuine issues of material fact to be tried and that it is entitled to judgment as a matter of law on plaintiff's ADEA claim. Gunther therefore requests that this Court enter summary judgment in its favor on plaintiff's Complaint.

DEFENDANT
GUNTHER INTERNATIONAL, LTD.

By _____
   Barry J. Waters – ct05520
   Theresa M. Parietti - ct-23559

Murtha Cullina LLP
Whitney Grove Square
Two Whitney Avenue, P.O. Box 704
New Haven, Connecticut 06503-0704
Telephone: (203) 772-7700
Fax: (203) 772-7723
e-mail:  bwaters@murthalaw.com
         tparietti@murthalaw.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant's Memorandum of Law in Support of

Motion for Summary Judgment was hand-delivered on this 29th day of August 2003 to:

Karen Lee Torre
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT  06510

_____
Theresa M. Parietti – ct23559