UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KARIN SODERBERG : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CASE NO. 3:02CV02010 (PCD) |
| : | |
| GUNTHER INTERNATIONAL, LTD. : | |
| : | |
| Defendant. : | AUGUST 29, 2003 |

DEFENDANT'S LOCAL RULE 56(a)1 STATEMENT
OF UNDISPUTED MATERIAL FACTS IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(a)1 of the Local Rules of Civil Procedure, defendant Gunther International, Ltd. ("Gunther") submits that there are no genuine issues to be tried with respect to the following material facts:

1. Plaintiff Karin Soderberg ("plaintiff") joined Gunther in June 1989. (Complaint, ¶ 5).

2. Gunther was in serious financial trouble for much of the 1990's. (Affidavit of Marc I. Perkins dated August 28, 2003 ("Perkins's Aff.") at ¶ 7) (Appendix at Tab A).[1] Plaintiff's own salary was reduced from $49,500 to $28,000 in 1994. (Deposition of Karin Soderberg, March 26, 2003 ("Soderberg Dep.") pp. 40-45) (Appendix at Tab B).

---

[1] Gunther submits concurrently herewith an appendix of unpublished authority and documents that it relies upon to support its motion for summary judgment ("Appendix").

3. In approximately October 1998, when the company was on the verge of bankruptcy, a group of investors that had invested millions of dollars into Gunther requested that Marc Perkins join Gunther as its president and chief executive officer ("CEO"). (Perkins's Aff. at ¶ 7).

4. Mr. Perkins, who was 53 years old at the time that he was named CEO, currently holds this title. (Id. at ¶¶ 3, 8).

5. When Mr. Perkins joined Gunther, the company's marketing function, which included plaintiff, was directed by Jewell Smokes, who worked out of his home in Atlanta Georgia, over 1000 miles from Gunther's corporate offices in Norwich. (Id. at ¶ 9).

6. Plaintiff began to report to Mr. Smokes in approximately fall 1997. (Soderberg Dep., pp. 34-35).

7. Mr. Smokes was approximately the eleventh supervisor to supervise plaintiff during her tenure with the company. (Id. at 17-33).

8. Mr. Smokes traveled to Norwich approximately one time every other month. (Perkins's Aff. at ¶ 9; Soderberg Dep., p. 34).

9. Mr. Perkins understood that marketing efforts were critical to Gunther's improvement and therefore was directly involved in Gunther's marketing area. (Perkins's Aff. at ¶ 10).

10. After Mr. Perkins joined Gunther, he concluded that marketing materials were virtually nonexistent and to the extent that they existed, they were ineffective. (Id. at ¶ 10).

11. In February 1999 Jewell Smokes evaluated plaintiff in writing; this was the first written evaluation given to plaintiff during her tenure with Gunther. (Soderberg Dep., p. 73).

12. Mr. Smokes, who was necessarily basing his evaluation primarily on what he could observe from Atlanta, evaluated plaintiff positively in plaintiff's first-ever written review. (G000038-47, Appendix at Tab P).

13. Among other changes aimed at increasing Gunther's financial viability, shortly after he joined the company, Mr. Perkins combined the company's sales and marketing departments and on November 23, 1998, he named Daniel Chevalier vice president of the combined sales and marketing department. (Perkins's Aff. at ¶ 11).

14. In a related change effective in May 1999, because it made more business sense for Gunther's marketing group, which worked out of Gunther's headquarters in Norwich, to report to a supervisor who also worked in Norwich, Mr. Perkins reorganized the marketing department's reporting structure so that it reported directly to Daniel Chevalier, who worked in the Norwich office. (Soderberg Dep., pp. 36-38).

15. As a result, in May 1999, plaintiff, began to report to Daniel Chevalier. (Perkins's Aff. at ¶ 12; Soderberg Dep., p. 36).

16.     Although the term "manager" was in plaintiff's job title, plaintiff did not supervise any employees.  (Soderberg Dep., p. 35).

17.     On several occasions during 1999, Mr. Perkins voiced his concerns regarding plaintiff's performance to Mr. Chevalier.  (Perkins's Aff. at ¶ 13).

18.     Generally displeased with plaintiff's job performance, Mr. Perkins spoke to plaintiff directly regarding two incidents: 1) in approximately fall 1999, when Ms. Soderberg did not, as requested, arrange for a hotel room for Mr. Perkins who was traveling to attend a trade show; and 2) when, after Mr. Perkins had requested that Ms. Soderberg arrange for two small photos of himself with a Board of Directors, Ms. Soderberg arranged (without permission) a major photo shoot of corporate personnel.  (Id.; Soderberg Dep., pp. 90-101).

19.     In January 2000, Mr. Perkins directed Mr. Chevalier to terminate plaintiff.  (Perkins's Aff. at ¶ 15).  Mr. Perkins was 54 years old at the time.  (Id.).  On January 28, 2000, Mr. Chevalier terminated plaintiff.  (Id. at ¶ 16).  Mr. Chevalier was nearly 44 years old at the time.  (Id.).

20.     Mr. Perkins did not know how old plaintiff was, nor did her age have anything to do with his decision to terminate her.  (Id. at ¶ 15).

21.     Mr. Perkins understood that Mr. Smokes had given plaintiff a positive evaluation.  Mr. Perkins discounted the weight to be given Mr. Smokes's evaluation because

he knew it was based on Mr. Smokes's observation from Atlanta, and also because Mr. Smokes's evaluation was contrary to his opinion, which Mr. Chevalier shared. (Id. at ¶ 14).

22. In a charge filed on or about May 18, 2000 with the Connecticut Commission of Human Rights and Opportunities ("CHRO"), plaintiff alleged that Gunther illegally terminated her on the basis of her age and gender. (See Affidavit of Illegal Discriminatory Practice, dated May 18, 2000) (Appendix at Tab D).

23. On July 30, 2002, the CHRO dismissed the charge on the merits based on its finding of "no reasonable cause." (See CHRO Notice of Final Agency Action No Reasonable Cause/Administrative Dismissal Determination, dated July 30, 2002) (Appendix at Tab E).

24. Plaintiff did not experience or witness any type of age discrimination during her employment at Gunther. (Soderberg Dep., pp. 66-67).

25. Plaintiff was surprised to learn that she was being terminated – she "wasn't expecting anything like this." (Id. at 51-52).

26. Plaintiff could not think of any reason to explain her termination and eventually surmised that she must have been terminated because of her age. (Id. at 66-67).

27. Plaintiff's sole basis for believing that Gunther terminated her on the basis of her age is that she was "the oldest person probably." (Id.).

28. After Gunther terminated plaintiff, Gunther conducted a broad search for a replacement. Gunther searched both internally and externally to fill this position, advertising

publicly and posting the job internally. (Perkins's Aff. at ¶ 17; G000185-90, Appendix at Tab G).

29.     After Gunther terminated plaintiff, plaintiff's position remained unfilled for nearly two months. (Perkins's Aff. at ¶ 17).

30.     More than two months after Gunther terminated plaintiff, Gunther decided that Gary Schaefer, a Gunther employee who was 42 years old, was the best candidate for the position. He was chosen above other candidates based upon his knowledge of Gunther's product. (Id. at ¶18).

31.     At the time of his promotion, Mr. Schaefer had been with Gunther for six years and was completing his Master's degree in management, with a concentration in marketing. (Id.; G000415-16, Appendix at Tab F).

32.     Gunther's decision to promote Mr. Schaefer had nothing to do with his age. (Perkins's Aff. at ¶ 19).

DEFENDANT - GUNTHER INTERNATIONAL, LTD.


By _____
    Barry J. Waters – ct05520
    Theresa M. Parietti - ct-23559

Murtha Cullina LLP
Whitney Grove Square
Two Whitney Avenue, P.O. Box 704
New Haven, Connecticut 06503-0704
Telephone: (203) 772-7700
Fax: (203) 772-7723
e-mail: bwaters@murthalaw.com
        tparietti@murthalaw.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant's Local Rule 56(a)(1) Statement of Undisputed Material Facts in Support of Motion for Summary Judgment was hand-delivered on this 29th day of August, 2003 to:

Karen Lee Torre
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT  06510

                                    Theresa M. Parietti – ct23559